Dov B. Kasachkoff v. Commissioner.
Kasachkoff v. Commissioner
Docket No. 76109.
United States Tax Court
T.C. Memo 1960-252; 1960 Tax Ct. Memo LEXIS 41; 19 T.C.M. (CCH) 1393; T.C.M. (RIA) 60252; November 25, 1960
Milton I. Baldinger, Esq., Wyatt Building, Washington, D.C., for the petitioner. Herbert A. Seidman, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent determined deficiencies in petitioner's Federal income taxes for the years 1954 and 1955 in the respective amounts of $1,279.51 and $372.33. He also determined additions to tax for the year 1954 in the total amount of $106.89 under the provisions of section 294(d)(1)(A) and section 294(d)(2) of the Internal Revenue Code of 1939. The *42 deficiencies arise by reason of respondent's determination that certain foreclosure losses sustained by petitioner in the taxable years constituted nonbusiness bad debts under the provisions of section 166(d) of the Internal Revenue Code of 1954 and therefore were allowable deductions only to the extent provided for by section 1211(b) of that Code. All of the deficiencies determined for the taxable years and the additions to tax determined for 1954 are here at issue. Findings of Fact The parties herein have stipulated some of the facts. We find them to be as stipulated and incorporate herein by this reference the stipulation and the exhibits attached thereto. The petitioner filed individual income tax returns for 1953, 1954, and 1955 with the district director of internal revenue at Baltimore, Maryland. During the taxable years petitioner had five dependent children. For the year 1953 petitioner reported the receipt of income as follows: Salary Simcha Company, Inc.
$ 2,500.00
Interest Income
7,280.37
Discounts Earned on Notes
2,822.38
$12,602.75 For that year petitioner reported his adjusted gross income in the amount of $9,857.96, *43 having deducted from his total receipts of $12,602.75 the sum of $2,744.79 made up of "Expenses on Notes" ($624.12), "Capital Loss - Bad Debt" ($1,000), "Interest" ($584.33), "General Expense" ($235.60), "Bank Charges" ($147.74), and "Audit & Legal" ( $153). For the year 1954 petitioner reported the receipt of income as follows: Salary - Simcha Company, Inc.
$ 3,750.00
Partnership - Joy Trading Com-
pany
1,483.18
Interest Income
6,605.96
Discounts Earned on Notes
2,853.09
Payoff of First Trust at less than
Face Value
779.00
Rent Income - 604 Florence St.
213.75
Rent Income - 1215 D St.
565.25
$16,250.23 For that year petitioner reported his adjusted gross income in the amount of $7,223.22, having deducted from his total receipts of $16,250.23 the sum of $9,027.01 made up of the foreclosure losses here in issue in the total amount of $5,358.36, a short-term capital loss carried over from 1953 in the amount of $1,000, interest paid to a bank in the sum of $166.05, interest on life insurance in the sum of $168, collection charges or notes in the sum of $131.73, legal expenses in the sum of $25, expenses on notes and real estate (other than depreciation) *44 in the sum of $1,985.20, and depreciation in the total sum of $192.67. For the year 1955 petitioner reported the receipt of income from Joy Trading Co., an "Estate or trust," in the sum of $1,530.99, a loss from Joy Trading Co., a "Partnership," in the sum of $956.86, and other income as follows: Interest Income
$ 6,622.76
Discounts Earned on Notes
4,283.68
Rent Income
715.00
$11,621.44 For that year petitioner reported his adjusted gross income as $7,637.03, having deducted from his net gross receipts the sum of $4,163.44 made up of a foreclosure loss here in issue in the amount of $2,200, a commission in the amount of $35.50, water charges in the sum of $70.31, legal expenses in the sum $7of, interest on first trusts in the sum of $425.23, "Interest-Bank & Life Insurance" in the sum of $317.78, taxes in the sum of $40.26, office expenses in the sum of $10, repairs in the sum of $157.07, advertising in the sum of $50.03, "Unclassified Expense on Properties" in the sum of $382.30, bank charges in the sum of $157.41, and depreciation in the sum of $310.55. None of the items of income or deduction of petitioner for the taxable years as above set forth have *45 been questioned by respondent except the foreclosure losses determined by him to have been nonbusiness bad debts. Petitioner acquired second and third trust notes secured on real estate in the District of Columbia during the years 1951 and 1952. Petitioner was not a party to any of the transactions at the time of the purchase and sale of the properties, but acquired the notes at a later date from the holders of the notes. By the end of 1952 petitioner had acquired 24 notes, and by the end of 1953 he owned 25 notes. The petitioner, during the years 1951, 1953, 1954, and 1955, did not sell or in any other manner dispose of the aforesaid notes except through foreclosure. Before petitioner purchased such notes he would personally look over the property, speak to the makers of the notes, check the references and employment of the makers, check their credit as well as possible, and check the amount of the first trusts existing on the properties. Petitioner based his valuation of the property securing the second trust note on the amount loaned on the first trust note, assuming that the amount of the first trust note was equivalent to two-thirds of the value of the property. Petitioner *46 always purchased notes at a discount. Petitioner's original plan was to sell the notes if he could do so at a profit even as low as $25 or $50. However, the market was bad, the properties which secured these notes were in very poor neighborhoods of the District of Columbia, and he found that it was impractical to sell the second or third trust notes until the monthly payments by the mortgagors had so reduced the first trusts as to create greater security for the second or third trust notes. As a result petitioner was not able to sell the notes at a profit during the taxable years. On May 11, 1954, and August 9, 1954, respectively, foreclosure proceedings were instituted against two properties (1215 D Street, S.E., and 604 Florence Street, N.E., Washington, D.C) on which petitioner held trust notes. As a result of said foreclosure proceedings and as incident to his ownership of the trust notes on each of said properties petitioner sustained losses in the amount of $5,358.36. On June 21, 1955, a foreclosure proceeding was instituted against a property known as 321 D Street, N.E., Washington, D.C., which property was encumbered in part by a trust note owned by petitioner. As a result *47 of said foreclosure proceeding and as incident to his ownership of the trust note secured by said property petitioner sustained a loss in the amount of $2,200. During 1953 and 1954 petitioner was employed by the Simcha Company, Inc., of which he was also a stockholder, and received wages totaling $2,500 and $3,750, respectively. Simcha was engaged in the business of buying and selling second trust notes. Petitioner spent at least 3 hours every weekday and all day on Sundays in the appraisal of properties and the making of collections on trust notes on behalf of the corporation, and frequently, during the same periods of time, did appraisal work and collecting in connection with the trust notes which he personally had bought or was contemplating buying. During 1954 and 1955 petitioner was a partner in a firm known as the Joy Trading Co. In 1954 petitioner received income totaling $1,483.18 from this partnership. The Joy Trading Co. engaged in the sale of Westinghouse electric light bulbs. Petitioner spent a couple of hours each day working for the Joy Trading Co. Petitioner acquired the second and third trust notes by the use of his own funds and also by funds borrowed from banks. *48 As security for such loans petitioner would use the notes for additional collateral. If no payments were made by the makers of the notes for several months petitioner would substitute other and better notes as collateral and would personally undertake the collections on the notes withdrawn. At times petitioner owed the banks in this connection as much as $18,000. Petitioner would also personally see to the payment of all sums due on notes with prior security to his and make repairs on the properties which were necessary to keep them habitable. Petitioner's usual practice upon acquisition of either a second or third trust note was to deposit immediately the note with a bank for collection. The bank would then send to the maker of the note a book providing for the making of periodic payments. After each periodic payment was received by the bank petitioner was so notified and credited with or paid the amount received less a service charge. If the bank did not receive payment on the due date petitioner was notified and thereafter would try to collect it personally. On his income tax return for 1955 petitioner reported a capital loss in the amount of $30.57 upon the sale of stock of *49 the Texas Pacific Oil Co. On his income tax return for 1955 petitioner reported a capital gain of $207.29 upon the sale of stock of the U.S. Hoffman Co. These securities had been owned and were sold by a partnership of which petitioner was a member. Petitioner on his income tax returns for 1953, 1954, and 1955 did not list his occupation. After advertising a couple of times in two Washington newspapers without result, petitioner did not advertise thereafter that he was engaged in the business of buying and selling trust notes, nor did he maintain any separate office other than his own home or any separate bank account or telephone listing for his activities in connection with the purchase of second trust notes. During the taxable years petitioner was engaged in the business of acquiring second and third trust notes secured by real property in the District of Columbia, of servicing such notes, and of holding them for sale or collection. Petitioner's accountant prepared for his signature a declaration of estimated tax for 1954. Petitioner signed such a declaration, returned it to the accountant for mailing, and retained a copy. It was the usual practice of the accountant to mail *50 such declarations upon the signing thereof to the office of the district director of internal revenue in Baltimore, Maryland, within the time prescribed by law. The office of the district director contains no record of the filing of any such declaration. Petitioner duly filed a declaration of estimated tax for 1954. Such declaration estimated petitioner's income tax for 1954 to be $750 and the tax to be withheld during that year to be $750. The withholding tax actually withheld from petitioner was in the amount of $850. Petitioner's income tax liability for 1954 was not in excess of $272.02. Opinion KERN, Judge: The questions involved in this case are all factual and have been resolved in our findings of fact. Since our difficulties in deciding this case concern the proper appraisal of the peculiar facts herein, an extended discussion is not required in this opinion. The primary issue is whether the foreclosure losses of petitioner were connected with a trade or business or, as respondent contends, were nonbusiness bad debts deductible only to the extent provided by section 1211(b) of the Internal Revenue Code of 1954. Respondent argues that with regard *51 to the second and third trust notes "petitioner did only what was necessary from an investment point of view" and "should not be considered as one engaged in a trade or business." Not without difficulty, we have reached a contrary conclusion. Among the factors leading us to this conclusion are the scope of petitioner's activities with regard to the notes, the continuity of such activities, the time and care devoted thereto in relation to his other activities, and their relative importance to him as income-producing activities. Questions of this kind are questions of degree. A realistic appraisal of the facts herein does not substantiate respondent's contention that petitioner's activities were "those of a mere passive investor" even though certain factors are present which tend to support respondent's argument. In our opinion other factors more persuasive require the conclusion which we have reached. We have also concluded from an appraisal of the evidence herein that petitioner filed a timely declaration of estimated tax for the year 1954 even though a witness testified that his examination of respondent's records disclosed no such declaration. It was established to our satisfaction *52 that petitioner signed such a declaration of which he kept a copy, that the signed declaration was given by him to the accountant who had prepared it for mailing to the proper office of collection, and that the accountant, who impressed us as being a careful and competent professional man, made a practice of immediately mailing such signed declarations to the proper official. In our opinion this positive testimony is more impressive than the negative testimony that no such declaration was found in the office of the district director in Baltimore. With regard to the question involving the addition to tax under section 294(d)(2) of the Internal Revenue Code of 1939, it is obvious that our decision for petitioner on the first issue also disposes of this question in favor of petitioner since there was no underestimation of tax. Decision will be entered for the petitioner.